UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARMEN RODRIGUEZ TERRIQUEZ,<br>               Plaintiff,<br>    v.<br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br>               Defendant. | No. EDCV 13-939 FFM<br><br>MEMORANDUM DECISION AND ORDER |

Plaintiff brings this action seeking to overturn the decision of the Commissioner of the Social Security Administration denying her applications for a period of disability, disability insurance benefits, and supplemental security income benefits. The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. Pursuant to the June 4, 2013 Case Management Order, on May 7, 2014, the parties filed a Joint Stipulation ("JS") detailing each party's arguments and authorities. The Court has reviewed the JS and the administrative record ("AR"), filed by defendant on December 12, 2013. For the reasons stated below, the decision of the Commissioner is reversed and remanded.

/ / /

/ / /

/ / /

/ / /

## PROCEDURAL HISTORY

On September 14, 2010, plaintiff filed applications for a period of disability, disability insurance benefits, and supplemental security income benefits. (AR 176-82, 183-84.) The applications were denied initially and upon reconsideration. (AR 71-72, 76-77.) Plaintiff filed a request for a hearing before an administrative law judge ("ALJ"). (AR 92-94.) ALJ Duane D. Young held a hearing on July 18, 2012.[1] (AR 30-62.) Plaintiff appeared with counsel and testified at the hearing. (*Id.*) On August 17, 2012, the ALJ issued a decision denying benefits. (AR 9-28.) Plaintiff sought review of the decision before the Social Security Administration Appeals Council. (AR 8.) The Council denied the request for review on March 27, 2013. (AR 1-7.)

Plaintiff commenced the instant action on May 29, 2013.

## ISSUES

Plaintiff raises three issues:

1. Whether the ALJ properly considered the opinions of the treating physician;
2. Whether the ALJ properly found that plaintiff retained the residual functional capacity ("RFC") to perform alternative work; and
3. Whether the ALJ provided clear and convincing reasons for rejecting plaintiff's testimony.

(JS 4-5.)

---

[1] An earlier hearing was adjourned so plaintiff could obtain counsel. (AR 63-70.)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); *Desrosiers v. Secretary of Health & Human Servs.*, 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. This Court must review the record as a whole and consider adverse as well as supporting evidence. *Green v. Heckler*, 803 F.2d 528, 929-30 (9th Cir. 1986). Where evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984).

**DISCUSSION**

**1.      The treating physician's opinions.**

       a.      The opinions.

Plaintiff sustained an injury to the left side of her body after falling at work in September 2008. (AR 39; *see*, *e.g.*, AR 301, 302.) Plaintiff sought treatment from James E. McSweeney, M.D., in connection with her worker's compensation claim. (AR 301; *see generally* AR 268-309, 323-46.) *Circa* April 2011, Dr. McSweeney opined, in pertinent part, that plaintiff could rarely finger, grasp, or handle objects with her left upper extremity (hereafter, the "manipulative restrictions"), but could occasionally engage in such actions with her right upper extremity. (AR 111.) In addition, plaintiff could stand and/or walk for up to two hours per eight-hour workday. (*Id.*) Dr. McSweeney further opined that during a typical workday, plaintiff's pain would frequently be severe enough to interfere with her attention and concentration; and her impairment would cause her to be absent from work three days per month. (*Id.*)

On April 2, 2012, Dr. McSweeney completed a permanent and stationary report. (AR 359-71.) Dr. McSweeney recommended that plaintiff undergo a second knee surgery. (AR 367.) In addition, Dr. McSweeney opined, in pertinent part, that plaintiff was precluded from frequent "work" above shoulder level. (AR 369.) Dr. McSweeney did not assign any manipulative restrictions, and he explicitly noted that plaintiff had no restrictions with regard to her left elbow and wrist. (*Id.*)

Dr. McSweeney's opinions were contradicted by several physicians in the record. In pertinent part, Thomas A. Schweller, M.D., an examining physician, opined that plaintiff could stand and walk for six hours in an eight-hour workday. (AR 312.) He further opined, with respect to plaintiff's left hand, that plaintiff should avoid above-eye-level reaching and repeated pushing/pulling, power-gripping, releasing, or torquing. (*Id.*)

G. Lockie, M.D., a state agency non-examining physician, opined that plaintiff could frequently lift and/or carry 10 pounds; stand and/or walk six hours in an eight-hour workday; sit six hours in an eight-hour workday; and should avoid repeated pushing/pulling, power-gripping, releasing, and torquing with the left hand. (AR 314.) Dr. Lockie also opined that plaintiff should avoid above-eye-level reaching with the left upper extremity. (AR 316.) In addition, plaintiff had no "handling (gross manipulation)" or "fingering (fine manipulation)" limitations. (*Id.*)

b. <u>The ALJ's determination</u>.

In his decision, the ALJ found that plaintiff had the severe medically-determinable impairments of history of left knee torn meniscus with surgical repair; left knee osteoarthritis; and left shoulder impingement. (AR 14.) The ALJ determined, in pertinent part, that plaintiff could lift and/or carry, and push and/or pull, up to five pounds with the left upper extremity; could stand and/or walk for two hours in an eight-hour workday; could sit for six hours in an eight-hour workday; and must have a sit/stand option. (AR 15.) In addition, plaintiff could engage in no more than occasional torquing with the left upper extremity; could not reach above eye level with the left upper extremity; and must be allowed to use a cane, as needed, for ambulation and balance.

(*Id.*) The ALJ "g[ave] some weight," with respect to plaintiff's left upper extremity, to Dr. McSweeney's April 2012 opinion. (AR 20.) The ALJ did not explicitly address Dr. McSweeney's April 2011 opinion. (*See generally* AR 17-22.)

Plaintiff contends that the ALJ erred in failing to discuss Dr. McSweeney's April 2011 opinion. She further argues that the ALJ failed to provide specific, legitimate reasons for implicitly rejecting the limitations to which Dr. McSweeney opined, in particular the manipulative restrictions (set forth in the April 2011 opinion) and the limitation regarding reaching above shoulder level (set forth in the April 2012 opinion). (JS 10-12, 15-16.) The Court finds that remand is not warranted.

In evaluating physicians' opinions, the case law and regulations distinguish among three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither treat nor examine the claimant (non-examining physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), *limited on other grounds*, *Saelee v. Chater*, 94 F.3d 520, 523 (9th Cir. 1996); *see also* 20 C.F.R. §§ 404.1502, 416.902, 404.1527(d), 416.927(d). As a general rule, more weight should be given to the opinion of a treating source than to the opinions of physicians who do not treat the claimant. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987); *see also* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). If a treating physician's opinion is controverted, the ALJ must provide "specific and legitimate" reasons, supported by substantial evidence in the record, in order to reject the treating physician's opinion. *Lester*, 81 F.3d at 830; *Holohan v. Massanari*, 246 F.3d 1195, 1202-03 (9th Cir. 2001). "The ALJ could meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (internal quotation marks omitted).

/ / /

/ / /

       c.    Analysis.

          (1)    The April 2011 opinion and the manipulative restrictions.

The Court is not convinced that the ALJ erred in failing to discuss Dr. McSweeney's April 2011 opinion. It is contradicted by Dr. McSweeney's own opinions, including the April 2012 opinion, to which the ALJ gave some weight, and a February 2012 assessment. (AR 368-369, 463; *see* AR 20.) The ALJ is entitled to resolve an evidentiary conflict between conflicting opinions of equal weight, and need not provide specific and legitimate reasons for giving weight to one over the other. *See Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002) ("'When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict'"; finding that ALJ properly relied on treating physician's last examination of record rather than her statements in student loan form, which contradicted her notes).

Even if the ALJ did err in failing to discuss the April 2011 opinion, any error was harmless. As to the manipulative restrictions set forth therein, the ALJ determined that plaintiff's left wrist and elbow impairments were nonsevere, *and were not expected to last for a continuous period of 12 months.* (AR 14-15.) Plaintiff does not challenge this latter finding (*see generally* JS), and it is supported by substantial evidence. As the ALJ asserted (AR 15), Dr. McSweeney reported positive findings relating to plaintiff's left elbow and/or wrist between August and October 2010 and between February and May 2011. (AR 274-76, 327, 476; *see also*, *e.g.*, AR 293 (noting in 2009 that plaintiff's left shoulder and wrist were asymptomatic).) As an impairment must be medically-determinable in order to support a finding of disability, the lack of positive findings for a continuous, 12-month period supports the ALJ's conclusion that plaintiff's elbow and wrist impairments did not meet the duration requirement. *See* 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. §§ 404.1508, 404.1509, 416.908, 416.909.

In addition, as the ALJ noted (AR 19, 20), Dr. McSweeney asserted in his April 2012 opinion that plaintiff's left wrist was within normal limits (AR 365) and plaintiff had no restrictions (AR 369) as to the left wrist and elbow. Furthermore, the Court notes

that although Dr. McSweeney assigned manipulative restrictions in April 2011, he did not assign any in February or April of 2012 (AR 369, 463).  Thus – whatever their cause – the manipulative restrictions did not last for 12 continuous months.

Whether severe or nonsevere, an impairment that does not meet the duration requirement is irrelevant to the disability analysis, as it cannot support a finding of disability, either in itself or in combination with other impairments.  *See* 20 C.F.R. §§ 404.1522(a)-(b), 416.922(a)-(b).  Thus, any error in failing to address the manipulative restrictions was harmless.  *See Stout v. Commissioner, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

(2) <u>The April 2012 opinion and the above-the-shoulder restriction</u>.

As noted, the ALJ gave "some weight" to Dr. McSweeney's April 2012 opinion.  (AR 20.)  However, the ALJ's assessment of the opinion is confusing at best.  Dr. McSweeney opined that plaintiff was precluded from frequent "*work*" above shoulder level with her left upper extremity.  Arguably, this restriction would encompass both above-shoulder-level *reaching* and above-shoulder-level *lifting* (of a gallon of milk, *e.g.*).  The ALJ used both interpretations in finding that the above-shoulder-level restriction was "well supported by the medical evidence of record."  (*Id*.)  However, the ALJ determined that plaintiff was precluded from frequent *reaching* above *eye* level.  In addition, he found that plaintiff could lift a maximum of five pounds with her left arm, but did not specify how high she could lift it.  These findings are inconsistent with his apparent acceptance of the above-shoulder-level restriction Dr. McSweeney assigned.

Dr. Schweller, the examining physician, opined that plaintiff could not engage in frequent above-eye-level *reaching*.  (AR 312.)  However, the ALJ gave "little weight" to Dr. Schweller's opinion.  (AR 21.)  Thus, the ALJ's grounds for assigning an above-eye-reaching are elusive.

The Court should not have to speculate as to an ALJ's reasoning.  *See Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).  Because the ALJ's assignment of an above-eye-level restriction conflicts with his assessment of the medical record and the

physicians' opinions, the Court finds that remand on this issue is warranted. On remand, the ALJ must clarify, as to this restriction, whether he is adopting or rejecting the opinions at issue and, if necessary, must provide legally-sufficient reasons for rejecting Dr. McSweeney's April 2012 opinion in this regard.

**2.** **Plaintiff's RFC.**

At the hearing, a vocational expert ("VE") testified that a hypothetical person with plaintiff's RFC and other relevant attributes could perform the work of a lens gauger, Dictionary of Occupational Titles ("DOT") entry 716.687-030; table worker, DOT entry 739.687-182; and addresser, DOT entry 209.587-010. (AR 56-58.) The VE stated that her testimony was consistent with the DOT, except for her testimony that the occupations were consistent with a sit-stand option. (AR 60.) The ALJ adopted the VE's testimony in his decision and found that plaintiff was not disabled. (AR 23.)

According to the DOT, each of the occupations at issue requires frequent reaching, fingering, and handling. *See* DOT 716.687-030, 1991 WL 679466; DOT 739.687-182, 1991 WL 680217; DOT 209.587-010, 1991 WL 671797. As set forth above, the ALJ determined that plaintiff could not reach above eye level with her left arm and could engage in no more than occasional torquing with her left arm. (AR 15.) Plaintiff contends that these restrictions preclude her from working in the occupations cited by the VE. (JS 16-19, 23-24.) The Court finds that remand is required, but only as to the restriction on frequent reaching.

Once a claimant has demonstrated that she cannot perform her past relevant work, the Administration must establish that she is capable of performing other work. 20 C.F.R. §§ 404.1520(f)-(g), 416.920(f)-(g). A VE's testimony may constitute substantial evidence of a claimant's ability to perform other work when the ALJ poses a hypothetical question that accurately describes all of the claimant's record-supported limitations and restrictions. *See Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). However, in order to find that the claimant can perform a job described in the DOT, the ALJ must definitively explain any inconsistency between the DOT job description and the

8

claimant's limitations. *Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001). Thus, the ALJ must ask a VE if the evidence he or she provided is consistent with the DOT. If it is not, the ALJ must obtain a reasonable explanation for the conflict. *Massachi v. Astrue*, 486 F.3d 1149, 1152-53 (9th Cir. 2007) (citing S.S.R. 00-4p, 2000 WL 1898704).

The Court finds that there is no conflict between plaintiff's torquing restriction and the handling requirements of the jobs at issue. The Administration defines "handling" as "seizing, holding, grasping, turning or otherwise working *primarily with the whole hand or hands.*" S.S.R. 85-15, 1985 WL 56857 at *7 (emphasis added).[2] As discussed above, the ALJ assigned no limitations with regard to manual dexterity. In addition, he clearly used "torquing" in reference to the entire arm, with involvement of the shoulder joint in particular. (*See* AR 15, 18-20). Therefore, the Court concludes that "handling," as defined by the Administration, is distinct from "torquing" as envisioned by the ALJ.

However, the Administration defines "reaching" as "extending the hands and arms in *any* direction." S.S.R. 85-15, 1985 WL 56857 at *7 (emphasis added). Thus, a DOT-listed job which requires frequent "reaching" may, in theory, require overhead or above-eye-level reaching. The Seventh Circuit and some district courts within the Ninth Circuit have accordingly found a possible conflict between a job which requires frequent "reaching" and a claimant's restriction on reaching above shoulder level. *See Prochaska v. Barnhart*, 454 F.3d 731, 736 (7th Cir. 2006) ("It is not clear to us whether the DOT's [reaching] requirements include reaching above shoulder level . . . ."); *see also*, *e.g.*, *Lang v. Commissioner of Soc. Sec.*, 2014 WL 1383247 at *7-*8 (E.D. Cal. Apr. 8, 2014); *Kirby v. Astrue*, 2012 WL 5381681 at *3 (C.D. Cal. Nov. 1, 2012); *Newman v. Astrue*, 2012 WL 1884892 at *5 (C.D. Cal. May 23, 2012); *Richardson v. Astrue*, 2012 WL 1425130 at *3-*5 (C.D. Cal. April 25, 2012); *but see*, *e.g.*,; *Fuller v. Astrue*, 2009 WL 4980273 at

---

[2] In terms of the dexterity required, handling lies between "reaching" (which involves reaching with the hands and arms) and "fingering" (which involves "picking, pinching, or otherwise working primarily with the fingers"). S.S.R. 85-15, 1985 WL 56857 at *7.

1 \*3 (C.D. Cal. December 15, 2009) (reasoning that DOT job descriptions did not state that jobs at issue required reaching with both hands).

The Court sees no meaningful distinction, in this context, between an above-shoulder-level restriction and an above-eye-level restriction. As it appears to the Court that the DOT contemplates omindirectional reaching in its use of the term "reaching," the Court finds that there is a conflict between the requirements of the jobs at issue herein and the above-eye-level restriction the ALJ assigned.

The ALJ did ask the VE whether his testimony conflicted with the DOT. (AR 60.) But as noted above, the ALJ must do more than ask. He or she "must elicit a reasonable explanation for the conflict before relying on the [VE] evidence to support a determination or decision about whether the claimant is disabled." S.S.R. 00-4p, 2000 WL 1898704 at \*2; *see Lidster v. Astrue*, 2012 WL 13731 at \*3 (S.D. Cal. Jan. 3, 2012) (upholding ALJ's determination where VE testified that "reaching" in job at issue could be done with either hand). Here, the VE did not acknowledge or explain the potential conflict. (*See* AR 60.) Accordingly, the Court cannot conclude that the VE's testimony is substantial evidence supporting the ALJ's determination that plaintiff can perform other work.

For the foregoing reasons, remand on this issue is required.[3]

### 3. **Plaintiff's testimony.**

At the hearing, plaintiff alleged that her left knee and left shoulder prevent her from working, and the problems with her left wrist are not resolved. (AR 39, 40-41.) She testified that she cannot perform household chores, such as cleaning and preparing meals, because she is in constant pain. (AR 50-51.) She stated that her daughter-in-law does these chores for her. (AR 50.) Plaintiff testified that she cannot lift things and picking up a gallon of milk hurts. (AR 41.) She further testified that her left shoulder

---

[3] The Court notes here the ALJ must redetermine this issue whether he retains the above-eye-level reaching restriction or adopts the above-shoulder-level restriction to which Dr. McSweeney opined in April 2012. (*See* discussion, *supra*.)

1  pain is constant if she moves her arm too much.  (AR 43.)  Her pain is 6/10 without
2  medication and 4/10 with medication.  (AR 44.)
3      Plaintiff additionally testified that she has constant left knee pain, which increases
4  with physical activity.  (AR 43.)  The pain is 8/10 without medication and 6/10 with
5  medication.  (*Id.*)  Plaintiff testified that she cannot stand for more than 10 minutes and
6  cannot walk for more than five minutes.  (AR 41-42.)  She requires a cane, prescribed by
7  a treating source, to walk.  (AR 42.)  Plaintiff testified that she can only sit for 20 minutes
8  at a time.  (AR 41.)  She further testified that the pain and her medication interfere with
9  her ability to concentrate.  (AR 44-45.)
10     In his decision, the ALJ gave credence to plaintiff's claim that she had difficulty
11 lifting a gallon of milk.  (AR 16, 20, 21.)  In consideration of that claim and plaintiff's
12 history of left shoulder surgery, the ALJ restricted plaintiff to lifting, carry, pushing, and
13 pulling no more than five pounds with the left upper extremity.  (*Id.*)  The ALJ also
14 credited plaintiff's claims of difficulty concentrating and needing a cane.  (AR 21-22.)
15 He accordingly limited plaintiff to performing simple, repetitive tasks and specified that
16 she would need a cane to ambulate.  (*Id.*)  The ALJ found, however, that plaintiff's
17 allegations of wrist pain and inability to sit for more than 20 minutes were not credible.
18 (*Id.*)  The ALJ also found that plaintiff was generally exaggerating the severity and
19 limiting effects of her symptoms.  (AR 16, 17.)
20     Plaintiff contends that the ALJ failed to provide sufficient reasons for finding
21 plaintiff incredible.  (JS 24-28, 32-34.)  The Court disagrees.
22     Once a claimant produces medical evidence of an underlying impairment that is
23 reasonably likely to cause the alleged symptoms, medical findings are not required to
24 support their alleged severity.  *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991).
25 However, an ALJ may reject a claimant's allegations upon:  (1) finding evidence of
26 malingering; or (2) providing clear and convincing reasons for so doing.  *Benton v.*
27 *Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003).  In the absence of evidence of
28 malingering, an ALJ may consider, *inter alia*, the following factors in weighing the

claimant's credibility:  (1) inconsistencies in either the claimant's testimony or between the claimant's testimony and his conduct; (2) his work record; and (3) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains.  *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002); *see also* 20 C.F.R. §§ 404.1529(c), 416.929(c).  The ALJ may also use "ordinary techniques of credibility evaluation."  *Thomas*, 278 F.3d at 960.  The ALJ's credibility determination is entitled to deference if his reasoning is supported by substantial evidence in the record and is "sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony . . . ."  *Bunnell*, 947 F.2d at 345 (internal quotation marks omitted).

Here, the ALJ reasoned that plaintiff's claim that she could only sit for 20 minutes was not believable, because (1) she admitted she could drive a car for 30 minutes (AR 228); and (2) she never stood up throughout the hour-long hearing.  (AR 17.)  Plaintiff contends that the latter reason (so-called "sit and squirm" jurisprudence) is an improper ground for rejecting a claimant's subjective claims.  (JS 34 (citing *Perminter v. Heckler*, 765 F.2d 870, 871 (9th Cir. 1985)).)  However, "the inclusion of the ALJ's personal observations does not render the decision improper" (*Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999)) where, as here, the ALJ does not discredit the claimant *solely* because of a failure to exhibit pain during the hearing.  *See Morgan v. Commissioner of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (upholding credibility determination based in part on ALJ's personal observations where there were conflicts between plaintiff's testimony, on one hand, and objective medical evidence and daily activities, on other hand).  Here, the inconsistencies in plaintiff's statements regarding her ability to sit and drive were a permissible ground on which to find her incredible.  *See* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4); *see also Thomas*, 278 F.3d at 958-59 (discounting credibility where plaintiff presented "conflicting information" about her alcohol and drug use and engaged in activities inconsistent with claim of disability).  Accordingly, the

ALJ's observation of plaintiff at the hearing constituted a permissible additional ground for rejecting plaintiff's subjective claims.

As to plaintiff's wrist complaints, the ALJ noted that plaintiff did not seek treatment for her left upper extremity until August 31, 2010, almost two years after she sustained the fall that allegedly caused the injuries at issue. (AR 18.) An unexplained or inadequately explained failure to seek treatment or follow a prescribed course of treatment is a clear and convincing ground for finding a plaintiff less than credible regarding an impairment. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). The ALJ also noted that there was no evidence that surgery or other aggressive treatment for her wrist was recommended. (AR 19.) Evidence of conservative treatment is sufficient to discount a claimant's testimony regarding the severity of an impairment. *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007).

The ALJ further reasoned that plaintiff was not credible in claiming that she could no longer perform any household work, because her physical therapist reported that she was able to perform a majority of her daily activities with minimal to no pain. (AR 16, 446; *see also* AR 374 (physical therapy discharge summary reporting that plaintiff could perform some chores and had improved functioning).) Although the ALJ characterized the physical therapist's reports as "medical evidence" (*see* AR 16), they are more accurately described as an inconsistency between plaintiff's testimony and her self-reported conduct. As noted above, such inconsistencies are a valid basis for discounting a plaintiff's subjective symptoms.

Finally, the ALJ reasoned that the medical evidence did not support plaintiff's subjective symptoms. As discussed above, the findings regarding plaintiff's left wrist were minimal at most. Although an ALJ may not premise the rejection of the claimant's testimony regarding subjective symptoms *solely* on the lack of medical support (*Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)), weak objective support does undermine subjective complaints of disabling symptoms (*Tidwell v. Apfel*, 161 F.3d 599, 601-02 (9th Cir. 1998)).

1 In sum, the ALJ credited some of plaintiff's subjective complaints and provided
2 record-supported, clear and convincing reasons for rejecting the rest. Accordingly,
3 remand on this issue is not warranted.

### ORDER

For the foregoing reasons, the decision of the Commissioner is reversed and remanded for proceedings consistent with this decision.

IT IS SO ORDERED.

DATED: June 18, 2014

/S/ FREDERICK F. MUMM
FREDERICK F. MUMM
United States Magistrate Judge